IN THE MATTER OF GEORGE G. WHITMORE, AN
ATTORNEY AT LAW.

Argued November 28, 1989—Decided February 16, 1990.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Thomas A. Deakin* argued the cause for respondent.

PER CURIAM.

This is an attorney-disciplinary proceeding in which the respondent, a municipal prosecutor, was found guilty of ethics violations for conduct indirectly contributing to the improper

dismissal of a drunk driving case. The trial court dismissed the case when the police officer who administered the breathalyzer test chose not to be present for trial. Respondent, apparently aware that the officer had an improper reason for not appearing, did not so inform the court. Following ethics charges against respondent, the District Ethics Committee ("DEC") found that respondent had violated the Rules of Professional Conduct, and recommended that he be given a private reprimand. The Disciplinary Review Board ("DRB") also concluded that respondent's conduct constituted a breach of ethics, but determined that it merited a public reprimand.

## I.

On March 9, 1986, Officer Thomas Hennessey arrested eighteen-year-old Brian Volker in the Borough of Monmouth Beach, where respondent, George G. Whitmore, served as municipal prosecutor. Hennessey charged Volker with driving under the influence, in violation of *N.J.S.A.* 39:4–50 and having an open container of alcohol in a motor vehicle, in violation of *N.J.S.A.* 39:4–51a. Patrolman White conducted breathalyzer testing of Volker. The test results were .15 and .16.

Volker and his family were friendly with New Jersey State Trooper Gerald Barbado, with whom they spoke about this matter. As a result, Barbado called Officer Hennessey on March 10, 1986, in an effort to intercede on Volker's behalf. During this telephone conversation, Barbado asked Hennessey if he had finished his police report for the case. Hennessey told Barbado, whom he did not know, that he had already completed and filed his report, and suggested to Barbado that Volker retain a lawyer.

The municipal court originally scheduled the *Volker* case to be heard on April 14, 1986. On the evening of the 14th, Barbado went to the courthouse to discuss the case with Hennessey and White. White was receptive of Barbado's entreaties, and he agreed to speak with respondent. White told

respondent that Volker hoped to attend the State Police Academy and that a conviction in this case would prevent him from doing so. Respondent told White that a desire to enter the Police Academy was not a defense to a drunk driving ("DWI") charge. The case was not heard that night because White was called away from court to transport a juvenile offender; it was continued until April 28, 1986.

On April 28, Barbado again attempted to arrange a favorable disposition of the DWI charge. He traveled to the courthouse and spoke with White. At some point after White and Barbado had conversed, White asked respondent if the case could be prosecuted without the breathalyzer evidence; respondent told White that it could not. Later that evening, but before the case was called, White informed respondent that he was going to leave. Respondent again explained to White that he needed him to prosecute the case, and urged him to stay. Despite respondent's request, White left the courthouse before the case was called, informing a courthouse attendant that he was on "convention leave."

When the case was called for trial, the judge asked respondent if he was ready to proceed. Respondent informed the court that he was not ready because the testing officer was unavailable. When the court asked why the officer was unavailable, respondent did not reply. Defense counsel immediately requested that the judge dismiss the DWI charge because of the absence of the testing officer and accept a guilty plea from defendant on the open container charge. Because this was a peremptory date (*i.e.*, "try or dismiss"), the court granted this motion.

Several days later, authorities began an investigation into the disposition of the DWI charge, apparently prompted by another police officer on the Monmouth Beach force who had not been involved. As a result of this investigation, the Monmouth County Prosecutor's Officer brought charges against Barbado, White, and respondent. A Grand Jury subsequently indicted

respondent for official misconduct, *N.J.S.A.* 2C:30–2a and *N.J. S.A.* 2C:30–2b, tampering with a witness, *N.J.S.A.* 2C:28–5, and conspiracy to commit both of these offenses. He was admitted into the pre-trial intervention (PTI) program, which he completed successfully.

The Office of Attorney Ethics charged respondent with violations of the Rules of Professional Conduct (*RPC*). The District IX (Monmouth County) Ethics Committee found that he had violated *RPC* 3.3(a)(5), which prohibits a lawyer from withholding from the court material information that can mislead the court. The DEC found a number of mitigating factors, including the absence of any base motives, the lack of time for reflection in the busy courtroom, respondent's excellent reputation as an honorable attorney, and the relative newness of the disciplinary rule. Accordingly, it recommended that he be given a private reprimand.

On appeal, the DRB determined that respondent had not violated *RPC* 3.3(a)(5). However, it found that respondent's conduct violated *RPC* 3.3(a)(2), which commands that a lawyer shall not "fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting in an illegal, criminal, or fraudulent act by the client." It also found that respondent's conduct resulted in the improper disposition of the DWI charge, contrary to *RPC* 8.4(d), which prohibits an attorney from "engag[ing] in conduct that is prejudicial to the administration of justice." The DRB by a five-two vote recommended a public reprimand, with the dissenters voting for a private reprimand.

## II.

The gravamen of respondent's misconduct is his failure to advise the court of the apparent or possible motives underlying Officer White's departure from court when the case was called for trial. That failure to communicate had serious consequences. As the DEC observed, the court dismissed the *Volker*

case "under the mistaken belief that a witness was unavailable when in fact he was available and present at the Municipal Courthouse and became unavailable only as a result of a corrupt agreement." The DRB similarly determined that respondent's "continuing lack of candor with the court resulted in an inappropriate disposition of a drunk driving citation."

The DRB properly faulted respondent for not coming forward and explaining to the court his belief or suspicion that the testing officer had absented himself from court for an improper reason, namely, to bring about a dismissal of the prosecution in order to obtain a favorable result for the defendant. There is clear evidence that respondent was generally aware or had a definite suspicion that the testing officer, whose testimony was indispensable to the prosecution, was seeking to do the defendant a favor by making himself unavailable as a witness. Respondent testified before the Grand Jury that when White told him that he was going to leave before the case was called, "I was certainly aware in my mind as to what his motivation might be." In addition, respondent had the opportunity to explain Officer White's absence and to communicate his suspicions to the court. But when counsel moved to dismiss the DWI charge, respondent said only, "There's really not much I can say in opposition to that considering that the testing officer is not available." Further, respondent conceded before the Grand Jury that in hindsight, he should have requested an adjournment notwithstanding the peremptory listing of the case.

*RPC* 3.3(a)(5) states: "A lawyer shall not knowingly fail to disclose to the tribunal a material fact with the knowledge that the tribunal may tend to be misled by such failure." We emphasize that the officer's improper reason for not appearing to testify—to enable a charged defendant to escape a conviction—is surely a "material fact." Further, the failure to disclose this material fact to the court could obviously have misled it and could have threatened the proper disposition of the case. It is sufficient under this Professional Rule that a prosecuting

attorney have a well-grounded suspicion that the police officer had an improper motive relating directly to the proper administration of criminal justice. In addition, it need not be shown that the failure to disclose to the court such a material fact actually caused an improper disposition of the case; it suffices if nondisclosure would "tend to mislead" the court. The facts in this case satisfy that standard. Respondent thus violated the clear mandate of *RPC* 3.3(a)(5).

Further, respondent's conduct is violative of the spirit, if not the letter, of *RPC* 3.3(a)(2). That stricture censures the failure to disclose material information when that serves to further an illegal, criminal, or fraudulent act of a client. Here, while respondent's "client" was the State of New Jersey, the police officer was the State's key witness. The respondent's failure to disclose material information, namely, the officer's motive to aid the defendant in the DWI case, could be said to have assisted the improper act of the officer—to abort the prosecution.

Respondent's explanation of his reason for the nondisclosure does not excuse the ethics offense. As observed by the DRB:

> Respondent's stated motive—protection of a police officer—cannot be accepted as an excuse for his lack of candor. Rather than upholding his obligation to be "candid and fair with the court," *In re Turner,* 83 *N.J.* 536, 537 (1980), respondent chose to favor the police officer. The court has noted that:
>
> > [a] judge who does "favors" with his office is morally an embezzler. He is also a fool, for a judge who plays a "good" fellow for even a few must inevitably be stained with the reputation of a man who can be reached. [*In re Matters,* 34 *N.J.* 259, 275–276 (1961).]
>
> The concept applies equally to a municipal prosecutor. *In re Weishoff,* 75 *N.J.* 326, 331 (1978).

Respondent's nondisclosure of material facts to the court was clearly unethical. He ignored his obvious duty to be candid and forthright with the court. " 'A lawyer has an obligation of being a candid and fair with the court. As an officer of the court, his duty can be no less.' " *In re McDonald,* 99 *N.J.* 78, 83 (1985) (quoting *In re Turner, supra,* 83 *N.J.* at 537. Indeed, "[c]andor and honesty are a lawyer's stock and trade. Truth is

not a matter of convenience. Sometimes lawyers may find it inconvenient, embarrassing or even painful to tell the truth." *In re Scavone*, 106 *N.J.* 542, 553 (1987).

The record indicates that respondent did not actively participate in the scheme to abort this prosecution, and, in fact, he did attempt to prevent White's exit by asking him to stay. Nevertheless, *RPC* 3.3(a)(5) demands more. The Rule does not permit an attorney who directly represents a party in a matter before a court to choose to become only a spectator to an unlawful scheme. The Rule does not countenance an attorney's acquiescence or even passivity in the face of improper actions by parties, witnesses, or others who can subvert the proper administration of justice. The Rule requires an attorney to disclose all material facts to the court if he or she has reason to believe the court may be misled by a failure to come forward. As the DEC concluded in this case, "Absolute candor coupled with an absolute duty to disclose, no matter how painful, is required."

We thus determine that when a municipal prosecutor becomes aware of an improper motive directly affecting the administration of justice on the part of a police officer in a case before the municipal court, which, if undisclosed, could mislead the court, *RPC* 3.3(a)(5), or could contribute to an improper or illegal result that benefits the witness, *RPC* 3.3(a)(2), the failure to disclose such information constitutes a violation of the Rules of Professional Conduct.

We have said many times that the primary purpose of the disciplinary rules is not to punish the offender but to protect the public from attorneys who do not live up to their professional responsibilities, *see, e.g., In re Rigolosi*, 107 *N.J.* 192, 206 (1987); *In re Pennica*, 36 *N.J.* 401, 418–19 (1962), and to preserve the public's confidence in the Bar, the Judiciary, and this Court, which is ultimately responsible for the conduct of attorneys in our State. "This commitment is heightened in the context of the administration of criminal justice, in which the public welfare is most profoundly implicated." *In re Conway*, 107 *N.J.* 168, 181 (1987).

In determining the appropriate punishment in this case, we again emphasize that "[t]he severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigohosian*, 88 *N.J.* 308, 315 (1982). We conclude that neither disbarment nor a suspension is warranted under the circumstances. The DEC stressed the absence of a nefarious motive on the part of respondent. The DRB also noted that extenuating circumstances surround respondent's actions; the Board was not satisfied by clear and convincing evidence that respondent in fact knew that White's absence "was based solely on the motive to have the case dismissed." The DRB stressed the absence of any improper motive on respondent's part; there was no purpose to corrupt the judicial process or to gain a personal profit or benefit. It has not been established that respondent's conduct itself "poison[ed] the well of justice." *In re Rigolosi, supra,* 107 *N.J.* at 210. Respondent's conduct does not reveal "a flaw running so deep that he can never again be permitted to practice law." *Ibid.*

As the DRB noted, respondent's actions are qualitatively different from those of the respondent in *In re Weishoff*, 75 *N.J.* 326 (1978), a municipal prosecutor who actively participated in a courtroom ticket-fixing charade and consequently was suspended for one year. Moreover, respondent, although indicted, was not convicted of any crime. This does not, of course, persuade us that no wrongful conduct occurred. *E.g., In re Yaccarino*, 117 *N.J.* 175 (1989); *In re Rigolosi, supra,* 107 *N.J.* at 206. Here, there is evidence that respondent understood the nature of his duty to the court but failed to act. Nevertheless, respondent was found to be eligible for PTI, which he completed successfully. This is evidence that there

was no serious culpability and that respondent was fully amenable to rehabilitation and self-correction.

There are, moreover, countervailing mitigating factors. *See supra*, at 475. Respondent may not have clearly seen the distinct line that must be drawn between his obligations to the court and his commitment to the State, on the one hand, and, on the other, his feelings of loyalty and respect for the police officers with whom he deals on a regular basis. Regardless of any feelings of loyalty to the police, we emphasize that respondent's duty in this case was clear; respondent breached that duty. Nevertheless, he did not purposely or affirmatively attempt to subvert the administration of justice.

In sum, we conclude that the imposition of a public reprimand is appropriate and will constitute sufficient discipline under the circumstances. It will properly sanction respondent for what should have been perceived and understood as a breach of ethics, and, further, will again emphasize to the bar that every attorney "owes continuing and constant fidelity to the administration of justice." *In re Conway, supra*, 107 *N.J.* at 181.

Respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs, including the costs of transcripts.

So ordered.

## ORDER

It is ORDERED that GEORGE G. WHITMORE of RED BANK, who was admitted to the bar of this State in 1970, be publicly reprimanded; and it is further

ORDERED that GEORGE G. WHITMORE reimburse the Ethics Financial Committee for appropriate administrative costs.

*For reprimand*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.