730 A.2d 340

IN THE MATTER OF ROBERT J. FORREST,
AN ATTORNEY AT LAW.

Argued January 21, 1999—Decided June 11, 1999.

*Tangerla Mitchell Thomas,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*David B. Rubin,* argued the cause for respondent.

PER CURIAM.

This attorney discipline proceeding arises from a complaint filed by the District XIII Ethics Committee (DEC) against respondent Robert J. Forrest. The DEC issued a report, finding that respondent had engaged in unethical conduct warranting a public reprimand. The matter proceeded to a hearing before the Disciplinary Review Board (DRB). The DRB found that respondent had failed to disclose a material fact to a tribunal, obstructed a party's access to evidence of potential value, and engaged in conduct involving deceit, dishonesty and misrepresentation. The DRB recommended that respondent be suspended from the practice of law for three months, thereby rejecting the DEC's recommendation that respondent be reprimanded.

I

In 1984, respondent was admitted to the New Jersey bar. At the time the ethics complaint was filed, respondent practiced with the law firm of Lieberman & Ryan in Somerville. In March 1993,

Robert and Mary Ann Fennimore, husband and wife, retained Lieberman & Ryan to represent them in a personal injury action resulting from a car accident in which the Fennimores' car had been hit by another vehicle. The Fennimores, both of whom were in the car at the time of the accident, sought to recover from the driver of the other car. Mr. Fennimore claimed that as a result of the accident he suffered a rotator cuff tear, limitation of movement in his right ring finger, limitation of strength in his left shoulder, chronic cervical strain, and headaches. He further claimed that all of his injuries were "permanent." The scope of Mrs. Fennimore's injuries is not reflected by the record.

On April 5, 1993, Lieberman & Ryan filed a complaint against the driver of the other car on behalf of the Fennimores. Respondent was assigned to work on the Fennimores' file.

Mr. Fennimore died sometime between April 1993 and December 1993, for reasons unrelated to the car accident. (The record does not indicate the specific date of death.) Mrs. Fennimore notified respondent of her husband's death.

In December 1993, respondent, knowing of Mr. Fennimore's death, served unsigned answers to interrogatories, entitled "Plaintiff Robert A. Fennimore's Answers to Defendant's ... Interrogatories," on his adversary, Christopher Walls, Esq. Neither the answers nor the cover letter indicated that Mr. Fennimore had died.

On June 8, 1994, respondent and Mrs. Fennimore appeared at an arbitration proceeding apparently conducted pursuant to *Rule* 4:21A (mandating arbitration in automobile negligence actions with amount in controversy less than $15,000 and other personal injury actions with amount in controversy less than $20,000). Before the proceeding, respondent advised Mrs. Fennimore that when she testified she should not voluntarily reveal her husband's death. When the arbitrator inquired about Mr. Fennimore's absence, respondent replied that Mr. Fennimore was "unavailable." The arbitrator awarded $17,500 to Mrs. Fennimore and $6000 to Mr. Fennimore. At no time before, during, or after the

arbitration proceeding did respondent or Mrs. Fennimore inform the arbitrator that Mr. Fennimore had died.

After the arbitration, respondent contacted Walls to discuss a possible settlement. Again, respondent did not inform Walls of Mr. Fennimore's death.

From January to August 1994, Walls propounded several requests on respondent to produce Mr. Fennimore for a medical examination, but respondent did not reply to those requests. Consequently, Walls filed a motion with the trial court to compel Mr. Fennimore to appear for a medical examination. Respondent did not oppose or otherwise reply to the motion, and the court entered an order on September 9, 1994, that directed Mr. Fennimore to submit to a medical examination on October 4, 1994. After the order was entered, respondent did not disclose Mr. Fennimore's death but nevertheless contacted Walls to further discuss settlement. Only when Mr. Fennimore failed to appear for the court-ordered medical examination did respondent inform Walls of Mr. Fennimore's death.

The DEC found respondent's conduct in handling the Fennimore matter to be unethical and concluded that respondent violated certain Rules of Professional Conduct (*RPC*), specifically *RPC* 3.3(a)(5) (failure to disclose material fact to tribunal), *RPC* 3.4(a) (obstructing party's access to evidence of potential evidentiary value), and *RPC* 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). The DEC recommended that respondent be publicly reprimanded.

In December 1997, the DRB held a hearing in the matter, at which respondent waived his appearance. The DRB issued its decision in June 1998, and concluded that respondent's conduct warranted a three-month suspension. We denied respondent's petition for review of the DRB's decision.

Respondent appears before this Court on an order to show cause why he should not be disbarred or otherwise disciplined. Respondent admits that he acted imprudently when he failed to

disclose Mr. Fennimore's death to the court, the arbitrator, and opposing counsel. Respondent argues, however, that certain circumstances mitigate his conduct. Specifically, respondent contends that he acted out of a desire to enhance the recovery for his clients and always had his clients' best interests in mind; that he made no misrepresentations throughout the Fennimore matter but merely *withheld* certain information, a negotiation technique he describes as "bluffing" and "puffing"; and that he did not knowingly or intentionally violate the Rules of Professional Conduct. Respondent has expressed regret for his misguided conduct in failing to disclose Mr. Fennimore's death.

## II

### A

The failure to disclose a material fact to a tribunal is an ethical violation under *RPC* 3.3(a)(5). Respondent violated that rule when he failed to inform the trial court that opposing counsel's motion to compel Mr. Fennimore to appear for a doctor's examination was moot.

We find guidance in *Virzi v. Grand Trunk Warehouse & Cold Storage Co.*, 571 *F.Supp.* 507, 512 (E.D.Mich.1983), in which the court held that, under the relevant rule of professional conduct, plaintiff's attorney had an affirmative duty to disclose the fact of his client's death to the court and his adversary. The attorney in *Virzi*, after learning of his client's death, appeared before the court at a pretrial conference and entered into a settlement agreement without notifying the court or opposing counsel of plaintiff's death. *Id.* at 508. In setting aside the settlement, the court held that "[b]y not informing the [c]ourt of plaintiff's death ..., plaintiff's attorney led this [c]ourt to enter an order of a settlement for a non-existent party." *Id.* at 511–12. Acknowledging that an attorney has an affirmative duty to zealously represent a client's interests, the court noted that an attorney "also owes an affirmative duty of candor and frankness to the

[c]ourt and opposing counsel when such a major event as the death of the plaintiff has taken place." *Id.* at 512; *see also Toledo Bar Ass'n v. Fell,* 51 *Ohio St.*2d 33, 364 *N.E.*2d 872, 873 (1977) (imposing indefinite suspension from practice of law on Workmen's Compensation attorney who "understood that it had been the long established practice ... to deny any claim for permanent-total disability benefits upon notice of the death of the claimant, [and] deliberately withheld information concerning his client's death prior to the hearing on the motion concerning the claim"); American Bar Association, *Formal Opinion No. 95–397* (1995) (advising that, when client dies in midst of settlement negotiations, lawyer has duty to inform court and opposing counsel of death in first communication to either); *In re Jeffers,* 1994 *WL* 715918 (Cal. Review Dept. of State Bar Court Dec. 16, 1994) (imposing two-year probation on attorney who failed to inform court of client's death and represented to court during settlement discussions that he could not communicate with client because "client's brain was not functioning").

We note that the relevant rule of professional conduct at issue in *Virzi, supra,* 571 *F.Supp.* at 509—*Rule* 3.3 of the American Bar Association's Model Rules of Professional Conduct—provides, in relevant part, that a "lawyer shall not knowingly make a false statement of material fact or law to a tribunal ... [nor] fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client." In contrast, our corresponding rule, *RPC* 3.3, provides, in relevant part, that an attorney "shall not knowingly fail to disclose to the tribunal a material fact with knowledge that the tribunal may tend to be misled by such failure." *RPC* 3.3(a)(5). In view of New Jersey's even more stringent requirement of disclosure than the standard set forth by the Model Rules cited in *Virzi,* we hold that respondent's withholding of the material fact of Mr. Fennimore's death was misleading and violative of *RPC* 3.3(a)(5).

In addition, respondent violated *RPC* 3.3(a)(5) when he withheld the fact of Mr. Fennimore's death from the arbitrator.

The fact that the violation occurred before an arbitrator as opposed to a court does not render the rule inapplicable. Arbitration is "a substitution ... of another tribunal for the tribunal provided by the ordinary processes of law." *Barcon Assocs. v. Tri–County Asphalt Corp.*, 86 *N.J.* 179, 187, 430 *A.*2d 214 (1981) (quoting *Eastern Eng'g Co. v. Ocean City*, 11 *N.J. Misc.* 508, 510, 167 *A.* 522 (Sup.Ct.1933)). An arbitrator acting pursuant to *Rule* 4:21A has the power to issue subpoenas, compel the production of relevant documentary evidence, administer oaths and affirmations, determine the law and facts of the case, and generally exercise the powers of a court in the management and conduct of the hearing.

Moreover, in an effort to offset rising litigation costs and overcrowded dockets, arbitration has become an integral part of the New Jersey judicial system. Less formal and less costly than litigation, see *Zirger v. General Accident Ins. Co.*, 144 *N.J.* 327, 342, 676 *A.*2d 1065 (1996), arbitration is now mandated in certain automobile negligence and personal injury actions. See *R.* 4:21A–1(a). The effectiveness of arbitration as an alternative to formal litigation clearly would be undermined if counsel did not deal candidly with arbitrators.

We view respondent's proffer to the arbitrator that Mr. Fennimore was "unavailable" for the arbitration hearing as nothing less than a concealment of the material fact that Mr. Fennimore was deceased. Unquestionably, the arbitrator would have been compelled to consider Mr. Fennimore's death in determining the amount of any monetary award. Additionally, we note that the cause of action originally filed on behalf of Mr. Fennimore—an automobile negligence/personal injury action—would have been transformed into a survivor's action upon Mr. Fennimore's death. See *N.J.S.A.* 2A:15–3. To withhold information about Mr. Fennimore's death from the arbitrator effectively prevented the arbitrator from properly discharging his responsibilities under the court rules.

B

■ As did the DEC and the DRB, we find that respondent obstructed opposing counsel's access to potentially valuable evidence, in violation of *RPC* 3.4(a), by failing to inform opposing counsel that Mr. Fennimore was deceased. Respondent deliberately misled his adversary by serving answers to interrogatories propounded on Mr. Fennimore without disclosing that his client was deceased. Respondent exacerbated that deception by attempting to negotiate a settlement of the claim although his adversary remained uninformed of Mr. Fennimore's death. As the court observed in *Virzi, supra,* the attorney

> did not make a false statement regarding the death of plaintiff. He was never placed in a position to do so because during the ... settlement negotiations defendants' attorney never thought to ask if plaintiff was still alive. Instead, in hopes of inducing settlement, [he] chose not to disclose plaintiff's death.... But the fact of plaintiff's death ... would have had a significant bearing on defendants' willingness to settle.
>
> [517 *F.Supp.* at 511.]

■ We also find that respondent engaged in conduct involving dishonesty, deceit, and misrepresentation, in violation of *RPC* 8.4(c). Respondent misrepresented to the arbitrator the reasons for Mr. Fennimore's absence at the arbitration proceeding, encouraged Mrs. Fennimore to withhold from the arbitrator the fact of her husband's death, and misled opposing counsel throughout the discovery and negotiation process.

III

■ The principal goal of disciplinary proceedings is to foster and preserve public confidence in the bar, *In re Hasbrouck,* 152 *N.J.* 366, 371, 705 *A.*2d 350 (1998), and to protect the public from an attorney who does not meet the high standards of professional responsibility, *In re Stout,* 75 *N.J.* 321, 325, 382 *A.*2d 630 (1978). In determining the appropriate sanction in attorney disciplinary matters, we consider the seriousness of the ethical infractions, the circumstances surrounding the misconduct, and the respondent's

record and reputation. *In re Whitmore,* 117 *N.J.* 472, 479, 569 *A.*2d 252 (1990); *Stout, supra,* 75 *N.J.* at 325, 382 *A.*2d 630.

Attorneys must "possess a certain set of traits—honesty and truthfulness, trustworthiness and reliability, and a profession-al commitment to the judicial process and the administration of justice." *Application of Matthews,* 94 *N.J.* 59, 77, 462 *A.*2d 165 (1983). Attorneys who have demonstrated a temporary or perma-nent lack of those traits have been sanctioned severely by this Court. *See, e.g., In re Lunn,* 118 *N.J.* 163, 169, 570 *A.*2d 940 (1990) (imposing three-year suspension on attorney who forged statement of his deceased wife in personal injury action); *In re Edson,* 108 *N.J.* 464, 473, 530 *A.*2d 1246 (1987) (disbarring attor-ney who fabricated defense for client, lied to prosecutor, and allowed client to perjure himself at trial).

A misrepresentation to a tribunal "is a most serious breach of ethics because it affects directly the administration of justice." *In re Johnson,* 102 *N.J.* 504, 510, 509 *A.*2d 171 (1986). Accordingly, we have recognized that "the destructive potential of such conduct to the justice system warrants stern sanctions." *Id.* at 511, 509 *A.*2d 171. In *Johnson,* respondent misrepresented facts to a trial court in order to secure an adjournment. In imposing a three-month suspension from the practice of law, the Court found that respondent's deliberate misrepresentations "not only prejudiced his clients but demeaned the entire legal profes-sion." *Id.* at 510, 509 *A.*2d 171. Similarly, in *In re Kernan,* 118 *N.J.* 361, 369, 571 *A.*2d 1282 (1990), respondent, who was repre-senting himself *pro se* in a divorce action, received a three-month suspension for failing to inform the court that he had transferred certain property to his mother. Respondent revealed the transfer only after he was directly questioned by the court regarding the matter. *Id.* at 363, 571 *A.*2d 1282; *cf. In re Mark,* 132 *N.J.* 268, 624 *A.*2d 1368 (1993) (imposing three-month suspension for oral and written misrepresentations to court and adversary).

In the instant matter, respondent concealed a material fact from the court and arbitrator. That concealment was compounded by

respondent's misrepresenting to the arbitrator the reasons for Mr. Fennimore's absence at the hearing, encouraging Mrs. Fennimore to evade questions about her husband's death, and obstructing Walls's access to the fact of Mr. Fennimore's death. Respondent's misconduct extended far beyond adversarial tactics that might constitute acceptable "puffing" or "bluffing." Respondent's non-disclosure of Mr. Fennimore's death deceived both his adversary and the arbitrator about a fact that was crucial to the fair and proper resolution of the litigation.

Respondent received a private reprimand in 1991 for the "inadvertent invasion of client funds" and failure to maintain attorney business records in accordance with generally accepted accounting practices. He has not been involved in any other disciplinary proceeding since this matter arose. Nevertheless, respondent has failed to demonstrate any circumstances that might mitigate or excuse his ethical lapse. Respondent's conduct was not an isolated incident but occurred over a period of at least nine months. Respondent engaged in a continuing course of dishonesty, deceit, and misrepresentation. See *In re Kornreich*, 149 *N.J.* 346, 368, 693 *A*.2d 877 (1997) (imposing three-year suspension when attorney repeatedly and consistently misrepresented her involvement in automobile accident). Respondent's deception of his adversary and the arbitrator is inexcusable, and the contention that it occurred because of a sincere but misguided attempt to obtain a permissible tactical advantage in a lawsuit strains our credibility. Misrepresentation of a material fact to an adversary or a tribunal in the name of "zealous representation" never has been nor ever will be a permissible litigation tactic.

We believe that respondent now understands the gravity of his misdeeds. Nonetheless, respondent's ethical transgressions are serious, and he must be sanctioned accordingly. We conclude that respondent should be suspended from the practice of law for six months. Respondent is also ordered to reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

*For suspension*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—none.

# O R D E R

It is ORDERED that **ROBERT J. FORREST** of **SOMER-VILLE**, who was admitted to the bar of this State in 1984, is hereby suspended from the practice of law for a period of six months, effective July 5, 1999, and until the further Order of the Court; and it is further

ORDERED that respondent be restrained and enjoined from practicing law during the period of his suspension and that he comply with *Rule* 1:20–20 governing suspended attorneys; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.