**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0367-22

SIRIA HERNANDEZ and FELIX
PEREYRA, her husband,

    Plaintiffs-Appellants,

v.

LA FORTALEZA, INC.,[1]

    Defendant-Respondent,

and

JAMES ZANAKIS, GHI
CORPORATION, and GHI INC.,

    Defendants.

_____

Submitted November 14, 2023 – Decided January 5, 2024

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2877-19.

---

[1] We note defendant-respondent is identified in the record as both La Fortaleza, INC. and La Fortaleza Restaurant, INC.

McHugh and Imbornone, PA, attorneys for appellants (Salvatore Imbornone, Jr., on the brief).

Kenneth Lowell Rose, attorneys for respondent (Kenneth L. Rose, of counsel and on the brief; Jeffrey M. Zajac, on the brief).

PER CURIAM

Plaintiffs Siria Hernandez (Hernandez) and Felix Pereyra (Pereyra), her husband, appeal from a September 26, 2022 order dismissing with prejudice their complaint, and an October 17, 2022 order awarding defendant La Fortaleza, Inc.'s attorney's fees and costs. We affirm.

We glean the facts and procedural history from the trial and motion records. Hernandez alleges that she "was caused to slip and fall on an uneven and raised defect [of] the walking surface" on defendant's property. The matter proceeded to a virtual trial, with the issue of defendant's liability to be tried first.

The trial began on July 26, 2022. In discussing some of the mechanics of the virtual trial, the attorneys and the trial judge reviewed where witnesses could be seated and the presentation of exhibits. Hernandez' attorney stated "she w[ould] be the first witness and [he] w[ould] not talk to her about her testimony at any time during the testimony, even if [they] br[oke] for lunch."

A-0367-22

Hernandez was summoned as the first witness. The trial judge explained to her "you must be alone in the room from where you provide your testimony, except the co-plaintiff, your husband may also be in the room."

During Hernandez' direct testimony, her attorney showed a photograph of the restaurant and "the area where the fall occurred." The following exchange transpired:

> Attorney: Now, do you see the area where you fell?
>
> Hernandez: Yes. On my way to the bench, on my way over there.
>
> Attorney: And where - - where did you fall in comparison to where the lady in red is standing?
>
> Hernandez: It was more or less on my way - - on my way to the bench, around there, right there.
>
> Attorney: Now, are you able, Ms. Hernandez, to use the cursor on your computer to point to the area where you fell?
>
> Hernandez: Let me see. Like that, on my way there, I tripped on my way there and that's when I fell, on my way.

At this point, the trial judge interjected:

> Trial judge: Okay. No one can tell you anything in your room. Is anybody speaking to you?
>
> Hernandez: Give me a second. My husband.

3

A-0367-22

. . . .

> Trial judge: Okay. I need your husband to stand behind you while you're doing this.
>
> Hernandez: Okay.
>
> Trial judge: And, Mr. Pereyra, you must remain quiet and not say anything or - - we need you to stand back, sir. Okay. Somebody is talking in the room that's not visible on the screen. Nobody can be telling Ms. Hernandez what to do.

Hernandez' attorney explained that Hernandez was having trouble manipulating the cursor on the screen. Therefore, the court recessed the trial for lunch. The trial judge instructed Hernandez' attorney to "straighten[] out" issues with the exhibits and the utilization of the cursor.

Defense counsel raised an objection asserting "[o]n [the] critical issue of liability of this nature, no coaching is tolerable, zero coaching." The trial judge reiterated the point to plaintiffs' attorney:

> Nobody else should be in the room but her husband. I made that clear. That was the oath. If anybody else is in that room, they must leave. Her husband must be visible meaning behind her. He is not to open his mouth, do you understand that, until it is his opportunity to testify.

4

During the recess the following conversation between Hernandez, Pereyra, and their attorney was recorded[2]:

> [Attorney]: This is the important part of the case. You show this picture, okay? Okay? and I'm going to say, I don't know if we got this far already but do you recognize this picture? Yes. This side of the restaurant? Does it show – does it fairly and accurately show the way the restaurant looked on the day that you fell? Yes. You must say that or the picture cannot be good. Okay? So, I want you – and the answer has to be, yes, because if you say, no, we can't do it. But you will say the same thing, I'm going to ask you the same question later.
>
> Anyway, okay. Do you see – do you see the bench that you were going to at the time you fell? You're going to answer, yes, right. And I will say to you, I'm going to move the cursor – and I will say I'm going to move the cursor. You tell me where is the bench? So, when I get up here, just, right there. Okay? The bench, right next to the lady. Okay? Okay.
>
> Now in this picture, do you see where you fell and I'm going to put it right where the – where the bench – from where the bench it, where did you fall?
>
> I will move the map. It's out of the (indiscernible). So, after we identify the bench, I'm going to put the [cursor] right here now and say, do you see the area where you fell? Yes. Okay. Now, how do I have to move the – you – because it has to be her voice. How do I move

---

[2] The judge explained "Courtsmart . . . was not running . . . . [h]owever because judiciary staff was in the courtroom, the[] back-up recording system . . . [was] running . . . . [and] record[ed] the dialogue between [p]laintiff[s'] . . . trial counsel . . . and [p]laintiffs."

5

the cursor to find the place where you fell?  So you should - -

Pereyra:  Back.

[Attorney]:  Okay. So, down, right, like that?

[Attorney]:  So, you say, move down.  So, I'm going to move it, move it, move it.  You have to tell me when to stop.  Right there, right?  Okay.  How about this distance from the curb?  Would it be right this way or further here?  It would be in the middle?

Pereyra:  Yeah.

[Attorney]:  Okay.  So, we're going to – first we find the bench.  That's the easy part.  Then I'm going to say, okay, I'm going to put the cursor right in front of the bench.  Now, tell me how to move the cursor to show how you fell and what you would have to say, you have to move – you could either say down or to the camera, okay, which you prefer.

(Plaintiffs speaking in Spanish).

[Attorney]:  Okay.  So, you're saying down?  So, I'll say, okay, I'm going to start to move it down and tell me when to stop.  I'm going to go down, down, down, down, down.

Hernandez:  Stop.

[Attorney]:  Okay.  How about this way now, from curb?

(Plaintiffs speaking Spanish).

6

[Attorney]: Well, here or further? Right in the middle? Okay. Good.

Pereyra: You don't have to say exactly in the middle. When we move it like this, you say, stop. Stop right there like this here. It doesn't have to go exactly in the middle –

[Attorney]: Okay.

Pereyra: -- because the middle, how come she (indiscernible) exactly in the middle. She don't know

After the recess, the trial judge reiterated her instructions that Pereyra "remain behind [Hernandez] in a chair" and "he should not be opening his mouth to say anything."

Defense counsel "continu[ed the] objection about coaching." Further, defense counsel advised that plaintiffs' attorney's microphone was on during recess and he "listened to [plaintiff's attorney] coaching the witness with the witness' husband." Defense counsel requested a mistrial.

In response to the trial judge's question regarding whether "there was any additional coaching to the witness" "during the . . . break," plaintiffs' attorney stated that he "did show the witness the scenario of moving the cursor along the exhibit."

The trial judge polled the jurors, to make certain they had not overheard the recess conversation. The judge concluded the "jury itself was not tainted."

7

The parties returned to virtual court the following day. Defense counsel renewed his request for a mistrial or, alternatively, a dismissal of plaintiffs' complaint with prejudice. The trial judge, after listening to the recording, found: (1) plaintiffs and their counsel had already been warned against coaching; (2) she "had to direct plaintiffs not to offer each other advice or direct each other how to answer"; (3) she "had to direct th[e] litigants to sit together on screen so[] as to remove any resemblance of impropriety"; and (4) plaintiffs' attorney "exacerbated the concerns of coaching by sharing his screen unmuted during a recess and revealing conversations . . . to be coaching the witnesses, to direct as to where the slip and fall occurred in the liability only portion of a bifurcated trial."

The trial judge concluded that she was compelled to declare a mistrial. She determined a mistrial was necessary because Hernandez was in the middle of her testimony and there was a "possibility of taint as to a critical issue in a liability only bifurcated trial—where . . . Hernandez fell." Moreover, "[t]he prejudicial effect in this circumstance [wa]s far too great and balance weigh[ed] too heavy in [the] misadministration [of] justice, that there [wa]s nothing that c[ould] be done other than to order a mistrial . . . ."

8

The trial judge ordered "[p]laintiffs and/or their [c]ounsel . . . to reimburse the [c]ourt for the costs of the interpreter and court services, which is the transcription . . . ." Further, the judge permitted defendant to file a "motion for dismissal with prejudice . . . . due to the issues of fundamental prejudice . . . ."

On September 23, 2023, the judge heard the parties' arguments on defendant's motion for dismissal with prejudice. As part of her review, she noted that her court clerk and two bilingual paralegals from defense counsel's office heard the recess conversation. Therefore, in addition to the transcript of the conversation, she considered the that "the court clerk confirmed that [plaintiffs' attorney] was attempting to facilitate a response to generate a factual possibility of liability." Moreover, she noted one of the paralegals certified that "Hernandez state[d] that she thought she tripped by the bench when shown a photo by [plaintiffs' attorney] pointing out where she fell." Further, the other paralegal certified that she "heard [Hernandez] state that it had been so long she didn't remember where she fell, which had not been interpreted by the court supplied interpreter."

In considering plaintiffs' opposition to the motion to dismiss, the judge noted plaintiffs did not rebut the paralegals' statements. Further, plaintiffs' argument that "it was clear from [Hernandez'] deposition testimony and her

A-0367-22

meeting with the expert that she was aware of the location of her fall" was unavailing because Hernandez testified that she "did not go to where the incident happened with the expert."

On September 26, 2023, the judge entered an order dismissing plaintiffs' complaint with prejudice; accompanied by a thoughtful and well-reasoned written opinion. The judge explained:

> The record before this court is unambiguous, and this court finds cause to dismiss this action with prejudice. The conduct of the attorney here to invite a client to state that an accident occurred in a particular place when she had no independent recollection to resolve the issues of liability where she was the only witness to the fall itself introduces prejudice too great to present to the finder of fact. The well of information that could be presented to the jury has been forever poisoned. There is no way to sufficiently determine that [p]laintiff can testify, especially considering that [p]laintiff had no recollection of her own fall and her attorney invited her to perpetuate a falsity at his direction to create an issue of liability.
>
> Moreover, [p]laintiff and her counsel, as well as [p]laintiff's husband, had previously been corrected to refrain from coaching this witness during testimony. This court saw it appropriate at that juncture to provide a limiting instruction and then to direct [p]laintiff and her counsel that further coaching would not be tolerated. The directive from her trial attorney was clear: "this is where you fell." The directive was *not* for [p]laintiff to testify as to "where you know that you fell or answer that you do not know." The directive was to create a falsity and commit fraud on this court. Such

10

is not tolerable. The bell cannot be unrung; [p]laintiff[s'] testimony will be forever tainted by the directive of [p]laintiff[s'] trial counsel.

The judge required "[p]laintiff[s'] counsel to pay [defendant's] attorney's fees and costs associated with trial and th[e] motion of [d]efendant." The judge instructed defendant's attorney "to submit an affidavit of attorney's fees within [fourteen] days and permitted [p]laintiff[s'] trial counsel . . . to file an objection to the affidavit within [ten] days after its filing." Defense counsel filed an affidavit in support of attorney's fees, which plaintiffs did not oppose. Therefore, on October 17, 2022, the judge ordered plaintiffs' attorney to pay defense counsel the sum of $20,640 within thirty days.[3]

Here, Hernandez argues the trial judge erred in the exercise of her discretion because: (1) there was no fraud on the court and (2) the sanction of dismissal is "too severe." We disagree.

"Findings by [a] trial judge are considered binding on appeal when supported by adequate, substantial, and credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974). Therefore,

> our appellate function is a limited one: we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so

---

[3] On May 4, 2023, we ordered a stay of the payment of attorney's fees pending appeal. Plaintiff posted a supersedeas bond in accordance with Rule 2:9-5.

manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice, and the appellate court therefore ponders whether, on the contrary, there is substantial evidence in support of the trial judge's findings and conclusions.

[Ibid. (internal citations omitted).]

The concept of fraud on the court applies to "a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his [or her] case or defense." Hyland v. Kirkman, 204 N.J. Super. 345, 374 (Ch. Div. 1985) (quoting Pfizer, Inc. v. International Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976)). "A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as . . . fabrication of evidence by counsel . . . ." Ibid. In Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 251 (App. Div. 2007), we held:

[a] fraud on the court occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989); Perna Elec. Data Sys. Corp., 916 F.Supp. 388, 397 (D.N.J. 1995). Unlike common law fraud on a party, fraud on a court does not require reliance.

12

> Separate and distinct from court rules and statutes, courts possess an inherent power to sanction an individual for committing fraud on the court. See e.g. Chambers v. Nasco, Inc., 501 U.S. 32 (1991); Perna, 916 F.Supp. at 388.

We conclude there is "adequate, substantial, and credible evidence" to support the judge's finding that plaintiffs and their attorney committed a fraud on the court. Rova, 65 N.J. at 484. Initially, Pereyra failed to comply with the judge's instruction on coaching Hernandez. Ultimately, the judge required Pereyra to stay in screen view by standing behind Hernandez. The judge admonished plaintiffs' attorney that Pereyra "should not be opening his mouth to say anything."

Moreover, plaintiffs' attorney, after indicating he would "not talk to [Hernandez] about her testimony at any time during the testimony, even if we break for lunch," proceeded "to perpetuate a falsity" by inviting, indeed directing, Hernandez to create an issue of liability by "stat[ing] that an accident occurred in a particular place when she had no independent recollection."

This conduct "set in motion [an] unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Aoude, 892 F.2d at 1118.

13

A dismissal with prejudice is a drastic remedy, to be employed "only sparingly." Zaccardi v. Becker, 88 N.J. 245, 253 (1982). In determining whether a trial court has abused its discretion[4] in dismissing an action with prejudice, we are guided by the manner in which the trial court has balanced the following factors:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.
>
> [United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993)[5]]

In employing this standard, we find no abuse of discretion in the judge's decision to dismiss plaintiffs' complaint with prejudice.

---

[4] Abtrax Pharms. v. Elkins-Sinn, 139 N.J. 499, 517 (1995) ("[T]he standard of review for dismissal of a complaint with prejudice . . . is whether the trial court abused its discretion, a standard that cautions appellate courts not to interfere unless an injustice appears to have been done.")

[5] The factors identified in Shaffer were relied upon in Perna which we cited with approval in Triffin, and thus serve as a useful guide here.

In determining culpability, the judge described the evidence as "unambiguous." She found plaintiffs' attorney provided a directive to Hernandez, regarding the location of the accident despite Hernandez having "no independent recollection" of where she fell. Moreover, the attorney's actions followed the judge's warnings and corrective instruction involving Pereyra's coaching Hernandez on this same subject. Plaintiffs' and their attorney's culpability are firmly established.

Further, plaintiffs share the blame in the fraud. Pereyra, despite instructions from the judge, coached Hernandez during trial and recess regarding the purported location of her fall. In addition, neither Pereyra nor Hernandez resisted their attorney's coaching. Instead, they were willing participants in a scheme to provide false testimony in an ongoing trial.

Moreover, plaintiffs' and their attorney's actions "prejudice[d] . . . the judicial process and the administration of justice." Ibid. Prejudice is self-evident when an attorney directs a client to testify to the location of an accident when the client has no independent recollection. From that point forward, Hernandez' every utterance was suspect and her case, the "judicial process," and "the administration of justice" were "poisoned" and "tainted" as a result.

A-0367-22

Similarly, defendant was prejudiced by the coaching and "falsified" testimony. From its opening statement, defendant asserted that Hernandez' testimony was "very inconsistent" and she "did not know where she fell." Therefore, defendant suffered prejudice as a result of adverse counsel coaching Hernandez and directing her testimony as to the location of the fall in a liability only trial when Hernandez had "no independent recollection."

Under these circumstances, plaintiffs' and their attorney's actions compelled the judge to impose the ultimate sanction of a dismissal with prejudice. As the judge explained, "the bell cannot be unrung; [p]laintiff's testimony will be forever tainted by the directive of [p]laintiff[s]' trial counsel." We find no monetary sanction or further corrective instructions could remove the "taint," permeating throughout plaintiffs' claim.

Plaintiffs' suggestion the "[t]rial [c]ourt could have imposed lesser sanctions such as barring [Hernandez] from further testifying at trial and allowing her case to proceed with the testimony of [Pereyra] and [the] expert to prove liability," is unavailing. Pereyra was already implicated in the fraud, as he coached Hernandez during trial and during the recess. Also, his testimony was similarly tainted by his attorney's "directive." Further, Hernandez testified

16

that she "did not go to where the incident happened with the expert," so the expert's testimony is similarly untrustworthy.

Lastly, the public interest is served by a dismissal with prejudice. "A misrepresentation to a tribunal 'is a most serious breach of ethics because it affects directly the administration of justice.'" In re Forrest, 158 N.J. 428, 437 (1999) (quoting In re Johnson, 102 N.J. 504, 510 (1986)). Therefore, dismissal warns plaintiffs and their attorney that their behavior will not be tolerated and that their conduct was so egregious as to cause them to suffer a "drastic remedy"—the loss of their cause of action. Moreover, it informs other litigants that they risk dismissal if they commit a fraud on the court. Finally, it confirms for the public's benefit that the judicial system, while adversarial, requires truthfulness and candor above all else. See RPC 3.3 (Candor Toward the Tribunal). The public is served by nothing less.

Plaintiffs argue the judge abused her discretion in ordering them to pay defendant's attorney's fees and costs. We note plaintiffs did not oppose the fee application and raised the issue for the first time on appeal. "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available . . . ." J.K. v. N.J.

State Parole Bd., 247 N.J. 120, 138 n.6 (2021) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)).

Nonetheless, Rule 2:10-2 provides:

> Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.

"Relief under the plain error rule, R[ule] 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). Further, the rule sets "a 'high bar,' requiring reversal only where the possibility of an injustice is 'real' and 'sufficient . . . .'" State v. Alessi, 240 N.J. 501, 527 (2020) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting State v. Macon, 57 N.J. 325, 326 (1971)).

Since plaintiffs failed to oppose the application before the trial judge and failed, here, to address "plain error," we decline to consider their arguments on the award of defendant's attorney's fees and costs.

Affirmed. We hereby vacate our order of May 4, 2023 staying the payment of the attorney's and costs.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-0367-22