WILHELMINA NEUBECK, complainant-appellant,

*v.*

WILLIAM H. NEUBECK, defendant-respondent.

[Argued June 22d, 1922.  Decided November 20th, 1922.]

1. Where the title to lands rests in a husband and wife as tenants by the entirety, the wife holds in her possession during their joint lives one-half of the estate in common with her husband, and, as between themselves, the respective rights of the parties are those of tenants in common.

2. Where the husband and wife own property as tenants by the entirety, the wife, even though she has deserted her husband without justifiable cause and is living in adultery, is entitled to an accounting of the rents collected by her husband from the common property.

3. Where the title to real estate rests in a husband and wife as tenants by the entirety, the wife is entitled to an accounting of the rents collected by her husband from the common property, even though the property was paid for by her husband out of his own funds and her interest therein was a gift from her husband.

4. The maxim, "He who comes into equity must come with clean hands," does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct upon the part of the complainants. The inequity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct unconnected with the act of the defendant which the complaining party states as his ground or cause of action; but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought.

5. Where the wife left her husband and withdrew from the family domicile without justifiable cause, and is living in adultery, the husband is not required (there being no divorce) to account to her for the rental value of the dwelling-house which was occupied as the family residence at the time of such desertion, and which is still occupied by the husband as his residence, even though the title thereto rests in the husband and wife as tenants by the entirety.

6. The case of *Black* v. *Black, 30 N. J. Eq. 215*, explained and overruled in part, and the reported reversal thereof in *31 N. J. Eq. 798*, explained.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan.

Mr. Martin P. Devlin (Mr. John H. Kafes and Mr.
Charles J. Falcey on the brief), for the appellant.

Mr. Edgar W. Hunt (Messrs. Katzenbach & Hunt on the
brief), for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

On October 10th, 1919, Wilhelmina Neubeck left her hus-
band, William H. Neubeck, and withdrew from the family
domicile. On October 14th, 1920, she filed the bill in this
case. By it she prays a decree directing her husband to
account for the rents, issues and profits of six parcels of
improved real estate in the city of Trenton (which were
acquired after their marriage and the title to which stands
in their joint names) and for the appointment of a receiver
to collect the rents due and to become due.

Upon the hearing in the court of chancery the bill was
dismissed, and the wife appeals.

We are of the opinion that the dismissal of the bill can-
not be sustained.

It appeared that the accounting was sought not only with
respect to the dwelling, formerly the family domicile, and
still the domicile of the husband, but also with respect to
five other properties which are in the possession of tenants
and the rents of which are collected by the husband.

The learned vice-chancellor held that inasmuch as the
complainant, as he found, had deserted her husband without
justification, and was actually living in adultery at Pitts-
burgh with another man (which finding we think was justi-
fied), she was not entitled to come into a court of equity,
in view of the doctrine of unclean hands.

But we think that doctrine has not the scope thus given
it, for reasons which we will hereinafter state.

We think this case, in its legal aspects, is quite like, and
is ruled by, O'Connell v. O'Connell, 117 Atl. Rep. 634 (de-

cided in this court after the decision of the present case in the court below). We there declared that where, as here, the title to lands rests in a husband and wife as tenants by the entirety, the wife holds in her possession during their joint lives one-half of the estate in common with her husband, and that the respective rights of the parties as between themselves were those of tenants in common. We further held that where a husband and wife thus owned property as tenants in common the wife was entitled to an accounting of the rents collected by her husband from the common property, even though she had deserted her husband without justifiable cause, and had refused to return at the solicitation of her husband.

We think it follows therefrom that where (as here) the husband and wife own property as tenants by the entirety, the wife, even though she has deserted her husband without justifiable cause and is living in adultery, is entitled to an accounting of the rents and profits collected by her husband from the common property.

In the *O'Connell Case* we pointed out that the principle upon which the rule rests is that a tenant in common, in leasing the common property and in collecting the rents from the lessees, acts not only in his own right, but as the representative of his co-tenants, and that, consequently, to the extent that the moneys so collected represent the rental value of the interest of his co-tenant, it is held in trust by him for their use.

It is suggested that the instant case differs from the *O'Connell Case,* for the reason that all of the purchase-money for the property was paid by the husband out of his earnings. But that, if true, is immaterial. Assuming that it was a gift by the husband to the wife, her title is as valid as if her interest was purchased out of her own funds. If the gift was conditional upon the wife being true to her marriage vows it may be that the court of chancery would set it aside upon a proper case being made; but that is not this case. So long as the title stands she is entitled to have her rights enforced against her co-tenant.

The theory adopted by the vice-chancellor that the door of the court of chancery was closed to the wife under the doctrine of unclean hands is in effect disposed of by the *O'Connell Case*. The fact that the doctrine was not specifically mentioned therein makes no difference. The desertion by the wife was an outstanding fact upon which the decision turned. However, we now state the reasons why the doctrine has not the sweep accorded it by the vice-chancellor.

While the maxim "He who comes into equity must come with clean hands" has a very wide application, it has also its limitations. It does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct on the part of the complainants. The inequity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct unconnected with the act of the defendant which the complaining party states as his ground or cause of action; but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought. *Pendleton* v. *Gondolf, 85 N. J. Eq. 308,* and cases collected in *21 C. J. 182* and *10 R. C. L. 391.* A recent illustration of the proper application of the doctrine is to be found in *Prindiville* v. *Johnson & Higgins, 93 N. J. Eq. 425.*

The vice-chancellor relied on *Black* v. *Black, 30 N. J. Eq. 215,* in the court of chancery. There the wife claimed rights in real and personal property *standing in the name of the husband.* The court of chancery denied the wife equitable relief for the moneys she had expended upon her husband's property because of her matrimonial misconduct, but granted her a money decree on three notes made to her by her husband for money lent. The report of a reversal in *31 N. J. Eq. 798,* is somewhat misleading, as an inspection of the files discloses. The wife took no appeal. The husband appealed from the money decree and this court reversed as to two of the notes and affirmed the decree as to the other note, thereby granting the wife relief as to that right regardless of her misconduct. But the action of the

court of chancery in the *Black Case* in applying the doctrine of unclean hands against the wife as to her claim against her husband's property did not reach this court at all, so that decision has the force of a chancery decision only. While the case has been cited frequently on other points, the doctrine of unclean hands as there applied against the wife has never been approved by this court. Certainly the doctrine has no application to the present case because there is no connection between the lawful acquisition of the property rights of the wife and her subsequent misconduct. The original acquisition by the wife of an interest by the entirety, and her later lapse from virtue, are two entirely separate matters, and, as we have pointed out, the unclean hands' doctrine is applicable only to cases where the particular claim is tied up to inequitable conduct as an element of its creation. That must be so. We have held that the wife does not forfeit her right to separate maintenance under an agreement, by later adultery, unless there be an express stipulation in the agreement that payment shall cease if the wife becomes unchaste. *Whittle* v. *Schlemm, 94 N. J. Law 112.* Why, then, say that her property lawfully and innocently acquired while living in chastity becomes in effect her husband's if she sin? But the respondent argues that we are here concerned only with the wife's standing in a court of equity, and not with her right or title in the property. Not so. On the contrary, as was pointed out in *Lister* v. *Lister, 35 N. J. Eq. 49; affirmed, 37 N. J. Eq. 331,* her right to the aid of equity depends entirely on the nature of her title, irrespective of the fact of her subsequent adultery.

Our conclusion therefore is that, since the wife is entitled to an accounting for the rents collected by her husband for the leased property, the bill was improperly dismissed.

But one of the properties in respect to which the wife asks an accounting was, at the time of the desertion by the wife, occupied as the family residence, and still is occupied by the husband and their infant son as their residence. As to that the wife, as matters now stand, is not entitled to an accounting.

In the *O'Connell Case, supra,* we held that the husband was not required to account for the rental value of the portion of the premises which he occupied as a residence, where the wife deserted her home without just cause, and had refused to return at the solicitation of her husband. We there pointed out that in order to render one co-tenant liable to another for the use and occupation of the jointly-owned premises there must be something more than a mere occupation thereof by the former and a forbearance to occupy by the latter. To hold him responsible to his co-tenant for the value of the use and occupation it must not only appear that the latter is out of possession, but that she is actually excluded from the enjoyment of her right of possession by her fellow-tenant.

In the present cast, as we have seen, the wife left her husband and withdrew from the family domicile voluntarily and without justifiable cause, and is living in adultery, and we think that the husband is not required (there being no divorce) to account for the rental value of the dwelling-house which was occupied as the family residence at the time of such desertion, and which is still occupied as a residence by the husband and his infant son.

Neither party has asked for a divorce; and therefore we are not now concerned with the effect of an absolute divorce on the rights of the parties; but that subject has been considered in *Buttlar* v. *Buttlar,* 67 *N. J. Eq.* 136; *affirmed,* 67 *N. J. Eq.* 729, and in *Sbarbaro* v. *Sbarbaro,* 88 *N. J. Eq.* 101.

We have thus disposed of the right to an accounting. We express no opinion as to the necessity of the appointment of a receiver, since that question was not considered by the vice-chancellor, and has not been discussed at all by the otherwise thorough argument of counsel. That matter may be left for the determination of the court below as the situation develops.

The decree will be reversed, with costs, and the record remitted to the court of chancery for further proceedings therein in accordance with the view herein expressed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, WHITE, WILLIAMS, ACKERSON, VAN BUSKIRK—11.