**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0852-17T2

IN RE THE ESTATE OF
MARIE O'SHEA.

_____

Submitted June 4, 2018 – Decided October 10, 2018

Before Judges Sabatino and Ostrer.

On appeal from Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000026-17.

Milstein, Weber & Collazo, PA, attorneys for appellant Patricia A. Commins (Richard J. Weber, on the brief).

Louis E. Granata, attorney for respondent the Estate of Marie O'Shea.

PER CURIAM

Patricia Commins appeals from the trial court's September 11, 2017 order denying reconsideration of its June 16 and 28, 2017 orders approving the accounting of the estate of her mother, Marie O'Shea. We affirm in part, reverse in part, and remand for further proceedings.

Marie O'Shea died on September 23, 2015, leaving behind an October 5, 1989 will and an April 13, 2010 codicil. As her husband predeceased her, the will left her estate, after expenses, to her three adult children: Patricia Commins, Paula O'Shea, and James O'Shea.[1] The codicil left $50,000 to James and $30,000 to Paula "at the time of the sale of [the] family home." The three siblings were to share equally the rest of the estate, after expenses, commissions and fees. James and Paula lived with Marie in the home before her death, and desired to purchase it.

The will and codicil were admitted to probate on October 26, 2015, and Paula was appointed executrix pursuant to the will. Disputes between Patricia and Paula followed. Through her attorney, Patricia withheld informal approval of Paula's summary of the account of the estate. Patricia disputed Paula's valuation of the sale and rental values of the home, and contested various expenses of the estate.

With respect to the home, Patricia rejected Paula's $279,000 valuation based on a real estate agent's estimate of fair market value, and insisted upon a formal appraisal. A subsequent appraisal valued the home as of August 2016 at

---

[1] For convenience, we refer to the three siblings by their first names and mean no disrespect in doing so.

A-0852-17T2

$280,000 "as is," noting the house was in only fair condition. The appraiser stated that houses in the neighborhood historically rented for $2000 to $3000 a month, but "some degree of deferred maintenance . . . would need to be corrected in order [to] maximize rent." The appraiser added that a comparable house in the neighborhood with numerous upgrades was then rented for $2000 a month.

Eventually, Paula filed a verified complaint for settlement of account. Patricia filed exceptions. The court approved distribution of $50,106.21 to Patricia; $104,911.71 to James; and $84,911.71 to Paula. The court also approved a commission to Paula of $15,182 and a fee in the same amount to the estate's attorney. The court also required the estate to pay the Surrogate's Office audit fees in the amount of $1,331.52.

The court's order was based on Paula's March 2017 statement of account, which valued the total corpus of the estate at $296,629.54, consisting of the $280,000 valuation of the house, plus the proceeds of the decedent's bank accounts. Added to the corpus was rental income of $30,000 – based on $2,000 a month for fifteen months – November 2015 to February 2017. However, based on an error of addition, the total corpus and income was listed as $324,629.54, instead of $326,629.54. The March 2017 statement also assumed a Surrogate fee of $160.

A-0852-17T2

After deducting the $80,000 in specific bequests to Paula and James, and $49,530.40 in expenses and reimbursements, the net estate before payment of commissions was listed as $195,944.14. The $49,530.40 consisted of funeral related expenses; real estate taxes and insurance; the appraisal fee and title search cost; $8,587.20 in costs for house repairs and maintenance; and reimbursement to Paula for a loan to the estate.[2]

The accounting calculated a corpus commission of $13,382, after applying a five percent commission on $200,000 and a 3.5 percent commission on $96,629.84; and an income commission of $1,800, after applying a six percent commission to the $30,000 in rental income. Thus, the total commission was $15,182. Attorney's fees were charged in the same amount.

The amount left for distribution was $164,735.14. One third of that was $54,911.71. As Patricia was previously distributed $4,805.50, the final amount due and owing to her was $50,106.21.

Patricia filed a motion for reconsideration, focusing on five items. She contended: (1) the imputed $2000 a month rental value of the home was low; (2) a $4910 electrical repair was a capital improvement that should not have been

---

[2] The decedent had named Paula the sole beneficiary of her life insurance policy. Paula used insurance proceeds to defray funeral and other estate costs.

charged to the estate; (3) the presumed allocation of a realty transfer fee was mistaken, because the transfer was allegedly exempt; (4) the attorney's fee award was excessive and unsupported; and (5) the commissions were excessive. The court denied the motion.

In her appeal, Patricia renews her objection to the five aspects of the account.

We review the trial court's order regarding the contested items for an abuse of discretion. See In re Trust Estate of Moore, 50 N.J. 131, 149 (1967) (stating that corpus commissions are left to the court's discretion); In re Executors of Koretzky, 8 N.J. 506, 535 (1951) (reviewing for abuse of discretion trial court's review of account); McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007) (reviewing award of attorney's fees for an abuse of discretion); In re Estate of Summerlyn, 327 N.J. Super. 269, 272 (App. Div. 2000) (stating that allowance of corpus commissions "will not be disturbed unless there has been an abuse of discretion"). However, we may disturb the trial court's order if the court failed to use the "proper legal approach" or to consider "all the legally significant factors." Moore, 50 N.J. at 149.

We turn first to the issue of the imputed rental value of the home. Although the appraiser stated that homes in the neighborhood rented for $2000

to $3000 a month, the court was not obliged, as Patricia contends, to approve a $2500 a month rental. The appraiser noted that a comparable home with upgrades – which the estate's property lacked – was renting for $2000 at that time. In short, the evidence supported the court's approval of $2000.

With one minor caveat, we also discern no error with respect to the $4910 maintenance item. The bulk of the $4910 cost was incurred to replace an electrical panel. The bill noted that there was water in the panel, reflecting that this was a repair, not a capital improvement. "A trustee shall make the following disbursements from principal: . . . (5) extraordinary repairs or expenses incurred in making a capital improvement including special assessments, and disbursements made to prepare property for sale." N.J.S.A. 3B:19B-25(a)(5). Although the property was appraised "as is" before the repair was completed, it was proper for the estate to absorb the repair cost to maintain the appraiser's value.

However, the $4910 included a $299 maintenance plan for the coming year, including annual tune-ups of the air conditioning and heating systems, which was transferrable to a new owner or a new home. This was not a repair item. Consequently, the estate should reimburse Patricia $100, as her approximate share of the $299 item.

6

Patricia also argues that the estate should not have included a $1551 realty transfer fee as an expense of the estate. She contends the estate is exempt. We disagree. N.J.S.A. 46:15-10 states that a realty transfer fee "shall not apply to a deed . . . [b]y an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate <u>in accordance with the provisions of the decedent's will or the intestate laws of this State."</u> <u>Ibid.</u> (emphasis added). As the trial court correctly held, quoting the statute, "the residence was being sold, not transferred 'to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or intestate laws of this State.'"

However, we note that the March 2017 statement of account did not include a realty transfer fee in its itemized expenses. Rather, the fee was included in expenses in an earlier statement of account prepared in January 2017.[3]

We also shall not disturb the court's approval of Paula's commissions. The corpus commission of $13,382.02 was calculated based on the statutory formula. "Commissions on all corpus received by the fiduciary may be taken as follows: 5% on the first $200,000 of all corpus received by the fiduciary; 3.5% on the

---

[3] We presume Paula intended to rely on the March statement because she filed it later. The court approved the distributions for the siblings set forth in that later statement.

A-0852-17T2

excess over $200,000 up to $1,000,000." N.J.S.A. 3B:18-14. A commission may be reduced "upon application by a beneficiary adversely affected upon an affirmative showing that the services rendered were materially deficient or that the actual pains, trouble and risk of the fiduciary in settling the estate were substantially less than generally required for estates of comparable size." Ibid. Patricia did not make such a showing. Indeed, her objections complicated administration of the estate.

The income commission also complied with the statute, which provides that "[c]ommissions in the amount of 6% may be taken without court allowance on all income received by the fiduciary." N.J.S.A. 3B:18-24. The trial court appropriately allowed Paula $1,800 as a commission for the $30,000 rental income attributable to the property.

Finally, we are constrained to reverse the trial court's award of $15,182 in attorney's fees. Counsel is entitled to an award of fees under Rule 4:42-9(a)(2). However, he was required to submit a detailed affidavit of services that addressed the factors in RPC 1.5(a), including the time and labor required. R. 4:42-9(b); see also Kingsdorf v. Kingsdorf, 351 N.J. Super. 144, 158 (App. Div. 2002) (noting the requirement that an application of fees be supported by an affidavit of services). Counsel provided a certification of fees totaling

8

$9,458.76 through March 3, 2017. He also certified that his fees in connection with the transfer of the realty was an additional $1,500. That total of $10,958.76 is significantly below the $15,182 allocated in the March 2017 statement.

We presume counsel charged the estate additional fees after March 3, 2017, as he submitted additional filings in the months leading to the court's orders in June and September 2017. However, a certification of fees in support of the fee award simply is not before us, and, we presume none was presented to the trial court. We therefore reverse that part of the court's order declining to reconsider the award of attorney's fees, and remand for reconsideration of the fees. Counsel may submit an updated certification of fees. Upon reconsideration of counsel's fees, the court shall adjust the distribution to the parties.

Before doing so, however, the court shall also take into account the error in addition, which understated the balance to be distributed by $2000. The court shall also take into account the updated Surrogate's fee.

Affirmed in part; reversed in part; we do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0852-17T2