**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3548-19

MARCI SPIRO,

    Plaintiff-Respondent,

v.

SCOTT SPIRO,

    Defendant-Appellant.

_____

        Argued June 9, 2021 – Decided July 16, 2021

        Before Judges Alvarez and Geiger.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0185-17.

        David H. Pikus argued the cause for appellant (Bressler, Amery & Ross, attorneys; David H. Pikus and Ross A. Fox, on the briefs).

        Ira C. Kaplan argued the cause for respondent.

PER CURIAM

In this post-judgment matrimonial matter, defendant Scott Spiro appeals from two orders: a December 20, 2019 order denying his motion to reduce alimony and alimony security term life insurance and awarding plaintiff Marci Spiro's counsel fees; and an April 7, 2020 order denying reconsideration and awarding plaintiff counsel fees. We vacate both orders and remand for further proceedings.

Plaintiff filed a complaint for divorce in 2016, after a thirty-one-year marriage. Defendant is sixty-one years old and is the sole owner and manager of American Asset Sales, LLC (AAS), a fragrance distributor to retailers in the cosmetics industry. Plaintiff was declared disabled as of 2015 and has received Social Security Disability benefits since January 2018.

Defendant was ordered to pay plaintiff pendente lite spousal support of $178,343.88 per year effective September 1, 2017. The parties engaged in negotiations that resulted in an April 20, 2018 Property Settlement Agreement (PSA). As part of that process, the parties retained a joint forensic accountant, Carleen Gaskin, CPA, to calculate the amount and duration of alimony. Gaskin calculated the amount of alimony by averaging defendant's income during the previous six years, 2012-2017. The six-year average was $327,442, based on his income of $402,651 in 2012, $321,913 in 2013, $115,901 in 2014, $430,477

A-3548-19

in 2015, $399,745 in 2016, and $303,000 in 2017. In contrast, during 2018, plaintiff received gross Social Security disability benefits of $935.60 per month, from which $428.60 was deducted for Medicare premiums and income-related adjustments, yielding net benefits of $507 per month or $6084 per year.

The PSA requires defendant to pay plaintiff open durational alimony in the amount of $145,000 per year. The PSA provides that alimony may be "modified or terminated in accordance with New Jersey case and statutory law . . . based upon a significant change in either party's circumstances," including cohabitation and good faith retirement. A dual judgment of divorce (JOD), which incorporated the PSA, was entered on June 7, 2018.

As security for the alimony obligation, the PSA also required defendant to maintain term life insurance in the amount of $1,500,000 for the first 5 years, $1,000,000 for the next 5 years, and $500,000 for the next 5 years, naming plaintiff as the irrevocable beneficiary.

In August 2019, defendant moved pro se to reduce alimony and decrease the amount of alimony security term life insurance he was required to maintain. Defendant claimed his business had declined significantly since late 2018 due to events beyond his control. In October 2018, Kmart, AAS's second largest client, filed bankruptcy and downsized from 1300 stores to 202 stores. In late

2018, Rite Aid, AAS's third largest client, downsized from 4300 stores to 2400 stores.

In addition, the ten percent tariff imposed in September 2018 on imports from China further reduced AAS's profitability. The tariffs increased to twenty-five percent in June 2019. Defendant asserted that AAS's "retail clients were unwilling to absorb any price increases of the fragrances, resulting in retailers reducing business with [defendant or AAS], resulting in a catastrophic loss in commissions to [defendant]."

Defendant certified these events reduced his 2018 gross income to $207,758, representing a 36.5 percent decrease from the 6-year average used to calculate alimony. Defendant's earned income for the first six months of 2019 was $50,811, far less than the $72,000 he paid in alimony and $5872 he paid in term life insurance during that same period. Defendant averred that he was forced to deplete an emergency business savings account from $75,000 to zero to make up the difference. He claimed he was paying his personal expenses by using credit cards and personal lines of credit, which he maxed out. Defendant alleged he owed more than $180,000 in credit card debt. He claimed this left him unable to pay his significant 2017 and 2018 state and federal income tax debts.

4

Based on AAS's financial situation, defendant estimated his 2019 gross earned income would be approximately $169,452, representing a 48.2 percent drop in income from the amount used to calculate alimony. Considering his annual $145,000 alimony obligation and alimony security life insurance premiums of $11,748, he would be left with only $12,704 to live on.

Defendant averred that in response to his declining income he lowered his personal expenses, including downsizing his residence to a one-bedroom apartment, terminating his personal life insurance, and not contributing to his retirement account. He also reduced the LLC's payroll by "getting rid of his most qualified and expensive employee . . . ."

Defendant provided nearly 200 pages of documents, including: a Case Information Statement (CIS); 2017-2019 sales reports; commission agreements with various vendors; a profit and loss statement; bank statements; alimony payment records; credit card information; federal and state tax debt information; and defendant's retirement account statement.

At plaintiff's request, the motion was adjourned for almost two months. Plaintiff strenuously opposed defendant's motion and cross-moved to enforce litigant's rights, establish and compel payment of arrears, impose sanctions, and

award attorney's fees. Defendant then cross-moved to strike plaintiff's cross-motion and for sanctions.

Plaintiff argued it was not appropriate for defendant, the sole manager of the LLC, to present the financial information regarding his company. Rather, defendant should have obtained a report from a forensic accountant. She further argued that defendant failed to make a prima facie showing. Plaintiff contended defendant knew his income would decline from nearly $400,000 to approximately $300,000 based on the LLC's reduced sales. She also claimed the projected nine percent decrease in income from 2018 to 2019 was not a substantial change in circumstances warranting an alimony reduction.

Plaintiff also asserted that defendant's application was "contrived" because he remained current on his alimony payments until just before filing the motion and that he acted in bad faith by discontinuing payments during the pendency of the motion. Lastly, plaintiff argued that defendant's business was not at risk of "drying up." Although some of defendant's clients were downsizing or filing bankruptcy, potential clients, like dollar stores, are thriving.

As to the fee application, plaintiff's counsel claimed he expended at least eight to ten hours and billed plaintiff at the rate of $350 per hour. Counsel did not provide an affidavit of services as required by Rule 5:3-5.

Defendant responded that he stopped remitting payments because he was unable to come up with the money—the reason for filing the motion. He also argued that N.J.S.A. 2A:34-23(l) does not require a movant to retain a forensic accountant to establish a substantial decrease in income.

On December 20, 2019, the trial court issued an order and oral decision denying defendant's motion without the benefit of an evidentiary hearing. The court stated:

> The defendant is seeking to modify his . . . alimony obligation. The statute N.J.S.A. 2A:34-23(l): self-employed payer must show economic and non-economic benefits that the payer receives from the business, compare them to the benefits that were in place at the time the order from which the relief is sought. Defendant provided various articles which really have no evidentiary value and he provides, and I do agree with [plaintiff's] counsel's argument in this regard, . . . the business analysis, he does provide this based upon information that he provided . . . of his own business which would be self-serving.

The court found "defendant is in complete control of the business and finances." It noted "that during the divorce [defendant] did not assert that the business was failing but that the retail economic climate was significantly changing downward, which has come to fruition." The court concluded:

> I cannot find, based upon my findings so far, that the defendant has shown by a preponderance of the evidence that he would be entitled to a modification and

I am going to deny that and the other relief he is seeking as they all stem from that.

As to the request to terminate alimony at full retirement age, that has to be denied because again, there's nothing in the [PSA] and that's all hypothetical.

As to plaintiff's cross-motion, the court found defendant was in violation of litigant's rights, having made no alimony payments in October, November, or December 2019. The judge ordered defendant to remit $5000 within two weeks or a warrant would issue in accordance with the JOD. As to plaintiff's request to award counsel fees, the court noted the JOD stated that "if there is a party default, then counsel fees shall be awarded." Without addressing the failure to submit an affidavit of services or expressly considering the factors set forth in Rule 5:3-5(c), the court awarded plaintiff $2500 in counsel fees.

Defendant moved for reconsideration. Plaintiff opposed the motion and cross-moved to compel payment of all alimony arrears and for an award of counsel fees.

The court considered the motions without oral argument and issued an April 7, 2020 order and accompanying written decision denying reconsideration. The court found "defendant makes much of the same arguments that he proffered at the December 20, 2019 oral argument. He also adds news arguments, such as the pandemic." The court noted it could not "consider new arguments on a

8

motion for reconsideration that were not raised in the original motion." The court noted "defendant had acknowledged that he was in a business that was trending downward." The court stated it "would not look back to the 2012 for changed circumstances. Rather, the court would look to the last order/judgment addressing establishment or modification of support in making its determination." It found defendant's arguments unpersuasive.

In addition, the court ordered defendant to pay $250 bi-weekly towards arrears with defendant remaining on warrant status. The court awarded plaintiff $500 in attorney's fees, finding counsel's rate of $350 per hour "fair given his experience as a Family law practitioner regularly appearing in Bergen County." (Da3). It noted plaintiff, who receives Social Security Disability benefits, relies on the alimony payments and has previously been awarded counsel fees. While not "maliciously filed," defendant's reconsideration motion "placed plaintiff in the position of having to respond" to defendant's "voluminous" submissions.

On appeal, defendant argued:

> POINT I
>
> THE TRIAL COURT ERRED BY DENYING DOWNWARD MODIFICATION OF ALIMONY BASED ON CHANGED CIRCUMSTANCES, AS DEFENDANT SET FORTH A SUBSTANTIALLY UNREFUTED PRIMA FACIE BASED FOR MODIFICATION.

<span style="float:right">A-3548-19</span>

POINT II

THE TRIAL COURT ERRED IN FAILING TO HOLD A PLENARY HEARING ON THE ISSUE OF ALIMONY BECAUSE DEFENDANT'S CERTIFICATION AND EXHIBITS UNEQU[I]V[O]CALLY CREATED A MATERIAL ISSUE OF FACT AS TO HIS ABILITY TO PAY.

POINT III

THE AWARDS OF LEGAL FEES SHOULD BE REVERSED.

An alimony order establishes only the present support obligation and is "always subject to review and modification on a showing of 'changed circumstances.'" Crews v. Crews, 164 N.J. 11, 28 (2000) (quoting Lepis v. Lepis, 83 N.J. 139, 146 (1980)). When a party moves for a reduction in alimony, the trial court undertakes a two-step inquiry. The court first determines whether the moving party has made "a prima facie showing of changed circumstances." Miller v. Miller, 160 N.J. 408, 420 (1999) (citing Lepis, 83 N.J. at 157-159). "Specifically, the party seeking modification of an alimony award 'must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself.'" Crews, 164 N.J. at 28 (quoting Lepis, 83 N.J. at 157). "Upon such a showing, a court may order discovery and hold a hearing to determine the supporting spouse's ability to pay." Miller, 160 N.J. at 420 (citing

10

Lepis, 83 N.J. at 157-59). A plenary hearing is held only if a party clearly demonstrates the existence of a genuine issue as to a material fact. Lepis, 83 N.J. at 159.

One factor that gives rise to "'changed circumstances' that warrant modification" is an "increase or decrease in the supporting spouse's income." Lepis, 83 N.J. at 151 (citations omitted). When a post-judgment alimony reduction is sought, "a substantial change in the financial condition of the supporting spouse after the entry of the divorce decree [is] relevant." Crews, 164 N.J. at 30. "That information [is] material in determining whether the moving party . . . can show that changed circumstances have substantially affected his or her ability to support himself or herself and the supported spouse, as required by the first prong in a Lepis review." Id. at 30-31.

When seeking a modification of alimony, "the movant shall append copies of the movant's current [CIS] and the movant's [CIS] previously executed or filed in connection with the order, judgment or agreement sought to be modified." R. 5:5-4(a)(4). Defendant met that requirement.

If "a prima facie case is established, tax returns or other financial information should be ordered." Lepis, 83 N.J. at 157. In addition, "the court shall order the opposing party to file a copy of a current [CIS]." R. 5:5-4(a)(4).

11

The PSA did not contain an anti-Lepis clause.[1]  The PSA provides that alimony may be "modified or terminated in accordance with New Jersey case and statutory law.  Both parties retain any and all rights either may have to seek a modification . . . of alimony based upon a significant change in either party's circumstances . . . ."

The parties disputed whether defendant's reduced income constituted a substantial change in circumstances.  Plaintiff argued defendant should have provided a forensic accountant's report analyzing defendant's actual income, including personal expenses paid by AAS as perquisites, and without an expert's report, defendant did not establish a prima facie case.  We note, however, that Gaskin analyzed the perquisites in the form of payment of personal and discretionary expenses in her report.  Those expenses were categorized as automotive, insurance (other than health), mobile communications/Blackberry, parking and tolls, office expenses (potentially groceries), and personal expenses (meals and entertainment).  Taking into consideration the portions of those expenses deemed personal, she estimated that the LLC paid personal expenses

---

[1]  An anti-Lepis clause sets "a fixed payment or establish[es] the criteria for payment to the dependent spouse, irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement."  Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993).

of $12,000 in 2012, $18,000 in 2013, and $13,000 in 2014. While personal expenses grew in 2016, that was before the PSA was entered. Gaskin did not find the personal expenses paid by AAS to be excessive or unusual.

There is no indication in the record of any dramatic increase in personal expenses paid by the LLC after 2014. Nor has plaintiff pointed out any specific personal expenses now paid by the LLC that were not paid prior to the divorce. Even if we were to add a similar amount of personal expenses paid by the LLC to defendant's 2018 income and projected 2019 income, his income would still be far below his average income during 2012 to 2017.

Plaintiff also argued that defendant's income reduction was foreseeable. Defendant disagreed, noting that Gaskin estimated AAS would experience long-term growth, not continued revenue decline. Gaskin opined:

> On an adjusted basis, the Company's revenues have been on a decline since 2014.
>
> Industry data states that the wholesale agent and broker industry is expected to grow at an annualized rate of 3.1 percent in the years leading to 2021. However, GDP is only expected to grow at 2.2 percent during the same timeframe. In addition, mass fragrance sales have been in a continuous decline since 2000. Given the amount of uncertainty within the wholesale agent and broker industry, the overall declines in the sales of mass fragrance and the Company's current declines, we estimate the Company's long-term growth to be approximately 1.5 percent.

13

Moreover, defendant is not precluded from obtaining an alimony reduction even if his decreasing income was foreseeable. Regarding an application to reduce support, "'changed circumstances' are not limited in scope to events that were unforeseeable at the time of divorce." Lepis, 83 N.J. at 152.

Defendant argues that the motion judge erred by denying a downward modification of alimony because defendant did not produce a forensic accountant's report analyzing the economic and non-economic benefits received from AAS, his wholly owned LLC that he completely controls, compared to the benefits that were in place when the JOD was entered. The judge noted that during the divorce, defendant acknowledged "that the retail economic climate was significantly changing downward, which has come to fruition." The judge found that "defendant [had] not shown by a preponderance of the evidence that he was entitled to a modification" of alimony. We decline to defer to the judge's findings that were made without an evidentiary hearing. See Bisbing v. Bisbing, 445 N.J. Super. 207, 213 (App. Div. 2016) (declining to defer to a family court's decision where the court "did not hold a plenary hearing").

The judge relied on N.J.S.A. 2A:34-23(l), which provides:

> When a self-employed party seeks modification of alimony because of an involuntary reduction in income since the date of the order from which modification is sought, then that party's application for relief must include an analysis that sets forth the economic and non-economic benefits the party receives from the business, and which compares these economic and non-economic benefits to those that were in existence at the tie of the entry of the order.

Neither N.J.S.A. 2A:34-23(l) nor Rule 5:5-4(a)(4) requires submission of a forensic accountant's report to make a prima facie showing of changed circumstances where the movant is self-employed. While the court has the discretion to order a self-employed party to produce an expert report in advance of a plenary hearing, the judge misapplied his discretion by imposing that requirement as part of a prima facie showing.

Our careful review of the motion record reveals that defendant met his burden of showing a prima facie case of changed circumstances. The amount of alimony was based on defendant's average income of $327,442 during the six-year period from 2012 to 2017. Defendant's moving papers, which included tax returns, profit and loss statements, and other financial documents, indicated that he experienced a substantial reduction in income following the execution of the PSA and entry of the JOD. He claimed that his 2018 income was $207,000, a 37 percent decrease from his average income during 2012 to 2017

15

and estimated that his 2019 income would be only $169,452. This substantial reduction was reflected by his change in lifestyle and clearly affected his ability to afford paying plaintiff alimony of $145,000 per year.

The parties disputed defendant's income and his ability to afford the alimony obligation. This "genuine, material and legitimate factual dispute" required discovery and resolution at a plenary hearing. Segal v. Lynch, 211 N.J. 230, 264-65 (2012). See also Lepis, 83 N.J. at 157, 159 (explaining that if a prima facie showing of changed circumstances is made, a court will order discovery, and if that discovery reveals there is a genuine issue of material facts in dispute, a plenary hearing will be held). The trial court erred by denying the motion without the benefit of an evidentiary hearing.

Defendant further argues that the attorney's fees awarded to plaintiff should be reversed. Considering our reversal of the denial of defendant's Lepis application, we agree. See Slutsky v. Slutsky, 451 N.J. Super. 332, 368 (App. Div. 2017) (setting aside a fee award that was based on the trial court's "insufficient, and now, vacated findings"). We recognize that the fees were awarded because defendant owed alimony arrears. However, those arrears appear to have accrued after the motion was filed. Presumably, any

modification granted on remand will be made retroactive to the motion filing date.

In addition, on the first motion, plaintiff's counsel did not submit an affidavit of services in support of plaintiff's fee application in direct violation of Rule 5:3-5(d) and Rule 4:42-9(b). Both rules provide that "[a]ll applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated in RPC 1.5(a)." R. 5:3-5(d); R. 4:42-9(b). "The filing of a conforming affidavit is ordinarily a prerequisite to an allowance under [Rule 4:42-9]." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 4:42-9(b) (2021) (citations omitted). See also Kingsdorf v. Kingsdorf, 351 N.J. Super. 144, 158 (App. Div. 2002). That principle applies with equal force to Rule 5:3-5(d). The court should have given plaintiff an opportunity to provide the required affidavit of services before ruling. Kingsdorf, 351 N.J. Super. at 159. Moreover, the court did not address the factors set forth in Rule 5:3-5(c) or make substantive findings of fact and conclusions of law required by Rule 1:7-4(a), when it granted plaintiff's initial fee application. See Giarusso v. Giarruso, 455 N.J. Super. 42, 53-54 (App. Div. 2018). For these additional reasons we vacate that fee award.

We reverse the December 20, 2019 and April 7, 2020 orders and remand for the trial court to conduct an evidentiary hearing. We leave it to the sound discretion of the trial court to determine the extent and timeframe for discovery and whether expert reports shall be required. We express no opinion as to the outcome of the evidentiary hearing.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3548-19